IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

QUINCY LEE CLAYTON                                  PETITIONER

V.                                  CIVIL ACTION NO. 2:16CV103-KS-LRA

LEPHER JENKINS, WARDEN                                  RESPONDENT

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Quincy Clayton was convicted in the Circuit Court of Jones County, Mississippi and seeks federal habeas relief under 28 U.S.C. § 2254. After a review of the entire record, the undersigned recommends that his petition be dismissed with prejudice.

Clayton was convicted of manslaughter in the death of his wife, Alice Louise Clayton. He was sentenced to serve a term of 20 years in the custody of the Mississippi Department of Corrections. The relevant facts are accurately described in the state court's opinion as follows:

> At trial, Alice's sister, Mary Wash, testified that she was living with Clayton and Alice at the time of the incident on June 21, 2009. According to Wash, Alice and Clayton had been arguing the night before, and the fighting continued the following morning, when Alice swung a knife at Clayton a couple of times while they were all in the kitchen. Wash was able to convince Alice to put the knife down. Clayton then began ironing some clothes for church, but Alice pulled them off the ironing board and stomped on them. Alice then went to their bedroom and shut the door. Clayton finished ironing, and he went to the bedroom to retrieve his church shoes. Alice refused to let him in the room to retrieve his shoes. Alice and Clayton continued arguing through the bedroom door. Wash testified that from her seat in the living room, she could see down the hall to where Clayton was standing outside the room. She stated that she did not see him kick open the bedroom door, but when she turned to look down the hall again, she saw him with the shotgun and heard a "boom." Wash stated that when she heard the "boom," she jumped out of her chair and ran down the hall toward Clayton, and they began

wrestling over the shotgun. Clayton let go of the shotgun, and, as he was leaving, he said, "that will shut her up," and "I'm through."

Clayton also testified at trial. Clayton stated that he and Alice had been arguing the night before the incident, and that Alice would not let him sleep in their bedroom. The following morning, the arguing continued, and Alice took his clothes, threw them on the floor, and stomped on them. According to Clayton, he picked up the clothes, and Alice started slapping him and "coming after him." Clayton pushed her into a chair, and Alice then went into the kitchen and returned with a knife. She continued hitting him and threatened to cut him with the knife; Clayton pushed her into the chair again. Alice got up from the chair and swung the knife at Clayton, cutting him on his shoulder. She went to the bedroom, while Clayton remained in the living room. A few minutes later, Clayton went to the bedroom to get his church shoes, but Alice "came at [him] with that knife stabbing at [him], telling [him] to get out of her damn room." Clayton testified he tried a couple more times to get his shoes, and she kept running him out of the room. He sat down in the hallway outside of the bedroom and said, "you need to stop acting stupid." According to Clayton, Alice came out of the bedroom and started kicking and slapping him, and she "stuck" him in the side with the knife. Alice again went back into the bedroom and locked the door. Clayton again asked to come get his church shoes, and when Alice said he could not, he pushed the door all the way open, and "[t]he frame and everything came off," because Alice had slammed it so hard. Alice again came at Clayton with the knife. Clayton backed out of the room and then got the shotgun he had used the day before to shoot a snake. He then went back to the bedroom to "bluff" his way into getting his shoes. He testified:

> When I walked in my bedroom, inside of my bedroom, when I walked in she come from around that bed with that knife drawn back up at me. I mean, I can see the white in her eyes. I mean, she had a look on her face. I mean, she didn't even look like my wife when I seen her. And she was coming up on me with that knife.... I ended up pulling the trigger.... And it was an accident what happened because I wasn't trying to shoot her.

Clayton elaborated that he had never been cut or stabbed in the twenty years they were together. He stated, "I was scared. I was scared because she ain't never did this to me.... She came at me—when she came at me[,] she had that knife drawn back." Clayton left the house, flagged down a patrol car, and said, "I'm the one you're looking for, ... because I just shot my wife." He testified he was taken into custody without incident.

*Clayton v. State*, 164 So.3d 522, 523–24 (Miss.App.,2015)

Clayton was convicted of manslaughter and sentenced to 20 years with a five-year firearm sentencing enhancement. Aggrieved, Clayton appealed and raised two issues:

> I. The trial court committed reversible error when it failed to apply the *Weathersby* [r]ule and grant Quincy Clayton a directed verdict of acquittal on manslaughter. Clayton was the only eyewitness to the homicide of Alice Clayton[,] and the evidence established that he injured Alice in necessary self-defense.
>
> II. Clayton's five-year sentence enhancement under Miss. Code Ann. Section 97–37–37 is unconstitutional, illegal, and contrary to the courts' holdings in *Apprendi v. New Jersey* [, 530 U.S. 466 (2000),] and *Waits v. State* [, 119 So.3d 1024 (Miss. 2013)].[1]

On May 19, 2015, the Mississippi Court of Appeals affirmed Clayton's manslaughter conviction but reversed the five-year sentence enhancement, with instructions for Clayton to be resentenced on remand without the enhancement. In accordance with the court's order, Clayton was sentenced to 20 years on the manslaughter conviction and ordered to pay a fine.

Clayton subsequently filed a *pro se* application for state habeas relief in which he argued:

> A. The defendant -- Petitioner [Quincy Lee Clayton] was denied his Miss. Const. Art 3, § 14 and U.S.C. Amend 14 § 1 right to be granted a "directed verdict" of acquittal by the trial court pursuant to *Weathersby v. State*, 165 Miss. 207, 147 So. 481 (1933) and the line of cases following the "<u>Weathersby Rule</u>"; where Mr. Clayton was the [only eye-witness] to what actually transpired in the bedroom and, his testimony makes out a prima face case of "self-defense."
>
> B. The jury verdict finding the defendant – Petitioner [Quincy Lee Clayton] guilty of "heat-of-passion 'manslaughter'" is so contrary to

---
[1] ECF No. 9-6.

the overwhelming weight of the evidence that to allow it to stand would sanction an "unconscionable injustice" and, thus the trial court's denial of Clayton's JNOV or in the alternative a motion for a new trial violates the "due process clause" of the Miss. Const. Art. 3, § 14 and U.S.C. Amend. 14 § 1; because the facts of the case blatantly demonstrate that Mr. Clayton is both "factually innocent" and "actually innocent" of "heat-of-passion manslaughter."

C. The defendant - Petitioner [Quincy Lee Clayton] is unlawfully, illegally and unconstitutionally being held in prison in violation of his U.S.C. Amend 14 § 1 right not be convicted [i.e., of "heat-of-passion- manslaughter] where the trial record is wholly devoid of any relevant evidence of a crucial element of the offense] except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime which he is charged as established by the U.S. Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979) and, *In re Winship*, 397 U.S. 358 (1970); thus the evidence is insufficient to support a conviction of anything but "self defense" pursuant to *Weathersby v. State*, i.e., the 'Rule.'[2]

On June 14, 2016, the Mississippi Supreme Court entered an order denying in part and dismissing in part Petitioner's motion for post-conviction relief. He now brings the instant petition and raises the following issues:

Ground One: The petitioner [Quincy Lee Clayton] was denied his Sixth Amendment and Fourteenth Amendment right to effective assistance of counsel on direct appeal as mandated by/in *Evitts v. Lucey*, 469 U.S. 387, 392 (1985) (citing cf. *Strickland v. Washington*, 466 U.S. 668 (1984) and *United States v. Cronic*, 466 U.S. 648 (1984)).

Ground Two: Petitioner [Quincy Lee Clayton] is serving an illegal sentence" and being deprived of his "<u>liberty</u>" for a crime he [did not commit] as demonstrated by state law and thus he is unlawfully and unconstitutionally incarcerated in the M.D.O.C. in violation of the United States Constitution.[3]

---

[2] ECF No. 9-7.
[3] ECF No. 1.

4

**STANDARD OF REVIEW**

This Court's review of Petitioner's claims for federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. Under the Act, this Court cannot grant a petitioner federal habeas corpus relief for any claim that was adjudicated on the merits in a state court proceeding, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under 28 U.S.C. § 2254(d)(1), this court reviews questions of law as well as mixed questions of law and fact, while questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts. *Id.* Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685 694 (2002). The state court's decision must be objectively unreasonable, not merely erroneous or incorrect. *Wood v. Allen,* 558 U.S. 290, 301 (2010).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Morales v. Thaler*, 714 F.3d 295, 301 (5th Cir. 2013). Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002); *Jasper v. Thaler*, 466 F. App'x 429, 435 (5th Cir. 2012). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S. C. § 2254 (e)(1).

## Discussion

In ground one, Clayton advances the same argument exhausted on state post-conviction review – that appellate counsel was ineffective in failing to raise the following post-conviction arguments on direct appeal: "(1) the trial court erred by denying Clayton's motion for directed verdict under *Weathersby v. State*, 165 Miss. 207, 147 So. 481, 482 (1933); (2) the evidence is insufficient to support the conviction; and, (3) the verdict is against the overwhelming weight of the evidence." The Mississippi Supreme Court found the ineffective-assistance-of-counsel claim was without merit, and dismissed all remaining claims as procedurally barred on post-conviction review. Clayton argues the state court's ruling was contrary to, or an unreasonable application of *Strickland*.[4]

---

[4] ECF No. 8-3, 9-7.

To establish a claim for ineffective assistance of appellate counsel, a petitioner must show (1) "counsel's representation 'fell below an objective standard of reasonableness'" and (2) "but for his counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008) (quoting *Strickland*, 466 U.S. at 688, 694). It is not enough to establish a deficiency and resulting prejudice, however. *United States v. Lewis*, 786 F.2d 1278, 1281 (5th Cir. 1986). To warrant federal habeas corpus relief, Clayton must demonstrate that the Mississippi Supreme Court's adjudication of his ineffective assistance of counsel claim was an "unreasonable application"of *Strickland*. Under the limited of scope of AEDPA review, even if this Court found the Mississippi Supreme Court's application of *Strickland* was incorrect, we could not recommend granting habeas relief unless we found that court's application of *Strickland* to be objectively unreasonable or an actual misapplication of the law. "[S]urmounting *Strickland*'s high bar is never an easy task" and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Vasquez v. Thaler,* 505 F. App'x 319, 326 (5th Cir. 2013) (quoting *Premo v. Moore*, 562 U.S. 115, 122 (2011) (internal quotation marks and citations omitted)).

In the present case, Clayton's principal argument in ground one is that his appellate counsel was ineffective for failing to raise his post-conviction objections to the sufficiency of the evidence on direct appeal. However, counsel did precisely that. Counsel advocated on direct appeal that the lower court erred in failing to apply the state's *Weathersby* rule, which would have resulted in a directed verdict in his favor.

7

*Weathersby*, 147 So. 481. Under the rule, "[w]here the defendant's, and sole eyewitness's, version of a slaying is uncontradicted, reasonable and credible, it must be believed. And, if such version creates an absolute legal defense, he is entitled to a directed verdict of acquittal." *Blanks v. State,* 547 So.2d 29, 33 (Miss. 1989); *see also Garth v. State*, 771 So.2d 984, 987 (Miss. Ct. App. 2000). However, if the defendant's version of events satisfies all the elements for a valid murder or manslaughter conviction, the *Weathersby* rule is not applied. *Clayton*, 164 So.3d at 526. A Weathersby challenge is a challenge to the sufficiency of the evidence. *Strickland v. State*, 192 So.3d 1105, 1108 (Miss. Ct. App. 2016).

In his appellate brief, counsel argued that Clayton was entitled to a directed verdict because he was the only eyewitness to his wife's shooting and the evidence established that he shot her in necessary self-defense. Counsel's argument was rejected, however. In so doing, the court of appeals noted that "it is a rare case that satisfies the requirements of the rule in *Weathersby,*" and because a jury could reasonably believe that Clayton's version of events satisfied the elements of manslaughter, the rule was not applicable in this case. *Clayton*, 164 So.3d at 525 (quoting *Garth*, 771 So.2d at 987). That counsel did not achieve the desired result does not render him ineffective. Nor does the rejection of this claim render it contrary to, or an unreasonable application of, clearly established federal law entitling Clayton to habeas relief.

The *Weathersby* rule "is purely a creation and application of state law which provides no basis for federal habeas relief." *Gilbert v. Kelley*, No.1:07CV136 P-D, 2009 WL 260792, at *5 (N.D. Miss., Feb. 2, 2009). For purposes of habeas review, the only

8

relevant question in assessing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Jackson* requires us to look to state law for the substantive elements of the offense, but "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 132 S.Ct. 2060, 2064 (2012) (internal quotation marks omitted). *Jackson* claims "face a high bar in federal proceedings because they are subject to two layers of judicial deference." *Id.* at 2062. In the first layer, a state appeals court reviewing the sufficiency of the evidence sets aside the jury's verdict "only if no rational trier of fact could have agreed with the jury." *Id.* In the second layer, a federal court grants habeas relief only upon a finding that the state court's rejection of a sufficiency of the evidence claim was "objectively unreasonable." *Id.* Under *Jackson's* sufficiency of the evidence standard, juries have broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that they "draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Viewing the evidence in the light most favorable to the State in this case, the jury heard sufficient evidence from which it could rationally infer that Clayton committed the statutory elements of manslaughter beyond a reasonable doubt.

Manslaughter is defined under Mississippi law as: "The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense[.]" Miss.

9

Code. Ann § 97-3-35 (Rev. 2014). In evaluating the sufficiency of the evidence, the Mississippi Court of Appeals explained as follows:

> A jury could reasonably believe that Clayton's version of the incident satisfied the elements of manslaughter, because a jury could have found that Clayton was not acting in necessary self-defense when he shot his wife with a shotgun. Clayton testified that he shot Alice after she came at him with a knife. However, it was Clayton who brought a gun to a knife fight. Clayton pursued Alice into a closed bedroom, all while knowing that Alice had a knife and had even struck him with the knife several minutes prior to the shooting. A jury could reasonably conclude that the time Clayton spent to retrieve the loaded shotgun from the closet, and the use of the shotgun to "bluff" his way into the room for his church shoes, were unreasonable and were not actions in necessary self-defense.

*Clayton*, 164 So.3d at 526. The state court's finding is not contrary to, nor an unreasonable application of *Jackson*. The evidence was more than sufficient to support the jury's verdict that Clayton did not kill his wife in necessary self-defense, and Clayton has presented nothing in his habeas petition to overcome the deference afforded the state court's decision. The facts of the killing, as testified by Clayton himself, undermine his self-defense claim. No relief is warranted on this claim.

The Court turns next to Clayton's allegation that counsel was ineffective in failing to challenge the weight of the evidence on direct appeal.[5] While the record establishes that counsel challenged the sufficiency of the evidence, the undersigned finds no explicit argument challenging its weight. Even if the failure to do so fell below an objective

---

[5] To the extent Clayton argues that he is entitled to federal habeas relief because the verdict was against the overwhelming weight of the evidence, his claim is rejected. It is well settled that "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence. . . ." *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985). A weight-of-the-evidence claim is purely a matter of state law, and is not cognizable on habeas review as it requires an assessment of the credibility of the evidence presented at trial. *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982).

standard of reasonableness, Clayton must show that this issue had a reasonable probability of success on appeal. Under *Strickland*, "[a]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Vollmer v. Davis*, 673 F. App'x. 406, 413 (5th Cir. 2016) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects [appeal] tactics rather than 'sheer neglect.'" *Dorsey v. Stephens*, 720 F.3d 309, 320 (5th Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 109 (2011)). The excluded issues must be "clearly stronger than issues counsel did present" to establish ineffective assistance of counsel. *Dorsey*, 720 F.3d at 320.

In this case, Clayton's counsel briefed two issues on appeal: sufficiency of the evidence and sentence enhancement. The Mississippi Court of Appeals rejected the sufficiency-of-the-evidence argument, but reversed the five-year sentence enhancement, with instructions for Clayton to be resentenced on remand without the enhancement. Clayton cannot show that a weight-of-the evidence claim was more meritorious than the claims raised by counsel. He confessed to shooting his wife. As noted on direct appeal, the reasonableness of his actions was a question for the jury. *Clayton,* 164 So.3d 526; *see also Webster v. State*, 817 So.2d 515, 518 (Miss. 2002) ("It is well established that matters regarding the weight of the evidence are to be resolved by the jury."). A reviewing state court will only disturb the jury's verdict "when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Willie v. State*, 204 So.3d 1268, 1275–76 (Miss. 2016)

(citation omitted). Clayton has not set forth what additional argument or facts counsel could have argued on appeal that would have met this burden. Under AEDPA's deferential review, the state court's conclusion that appellate counsel was not ineffective for failing to challenge the weight of the evidence, was not contrary to, or an unreasonable application of *Strickland*.

In ground two, Clayton argues that he is serving an illegal sentence in violation of his due process rights because he is factually and actually innocent of manslaughter. He asserts that new "exculpatory" evidence from a juror corroborates "the insufficiency of the evidence," and demonstrates that the Mississippi Supreme Court's denial of post-conviction relief was contrary to, and an unreasonable application of clearly established federal law.

To the extent Petitioner is asserting a freestanding actual innocence claim, he fails to present a cognizable claim for federal review. "[A] claim of 'actual innocence' is not itself a constitutional claim, but [is only] a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *White v. Thaler,* 522 F. App'x 226, (5th Cir. 2013) (unpublished) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)); *see also Kinsel v. Cain*, 647 F.3d 265 (5th Cir. 2011).

Second, while Clayton presented this argument in his motion for post-conviction relief, the Mississippi Supreme Court dismissed those portions of his post-conviction application that were raised or could have been raised on direct appeal as procedurally barred. *See Jordan v. State*, 918 So.2d 636, 644 (Miss. 2015). Although Clayton challenged the sufficiency of the evidence under *Weathersby* on direct appeal, he did not

12

present this precise argument for appellate review. The procedural default doctrine precludes federal courts from considering a habeas claim when the state court rejected that claim on an independent and adequate state law ground. *Martin v. Maxey*, 98 F.3d 844 (5th Cir. 1996). The Fifth Circuit has long considered Miss. Code Ann. § 99-39-21(1) to be an adequate state procedural bar because Mississippi courts have strictly and regularly applied it to similar claims. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). A federal habeas petitioner may overcome a procedural default, and obtain federal habeas corpus review of his barred claims on the merits, if he can demonstrate cause for the defaults and actual prejudice, or if he can show that failure to consider the claims will result in a fundamental miscarriage of justice.

Clayton asserts that ineffective assistance of appellate counsel constitutes "cause" to overcome his procedural default. Liberally construed, he appears to contend that appellate counsel should have argued that the trial court erred in failing to consider newly submitted evidence from one of the jurors. However, "attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel." *Davila v. Davis*, -- U.S. -----, 137 S.Ct. 2058, 2065 (2017). Clayton does not identify any objective factor external to the defense that prevented appellate counsel from raising the juror issue on appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Effective counsel need only raise those arguments most likely to succeed, and as noted *infra*, Clayton cannot show that this claim was plainly stronger than those actually presented.

13

The new evidence to which Clayton principally refers is a juror's letter considered and rejected by the trial judge prior to sentencing. It is not new. The juror requests that the trial court consider leniency in sentencing because, *inter alia*, she is not convinced beyond a reasonable doubt that he is guilty of manslaughter, and believes that jurors compromised their views to avoid being a hung jury.[6] Even if Clayton could overcome the procedural bar, the evidence could not be considered. *See Tanner v. United States*, 483 U.S. 107, 117 (1987) ("[L]ong-recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry."). Post-verdict inquiries into the deliberative thought process of jurors are precluded from judicial review under state and federal law. *See* Fed. R. Evid. 606(b);[7] Miss. R. Evid. 606(b)(1); *see also Pyles v. Johnson,* 136 F.3d 986, 991 (5th Cir. 1998); *Erikson v. Rowland,* 991 F.2d 803, at *2 (9th Cir. 1993) (Rule 606(b) "applies to petitions for habeas corpus from state court prisoners.").

Clayton has not demonstrated the requisite cause and prejudice to overcome the procedural default, nor has he shown, with new and reliable evidence, that a fundamental miscarriage of justice would result from this Court's failure to consider the claim.

---

[6] ECF No. 1-5, p. 91.

[7] Under Rule 606(b) of the Federal Rules of Evidence, jurors' affidavits are inadmissible "regarding the following four topics: (1) the method or arguments of the jury's deliberations, (2) the effect of any particular thing upon an outcome in the deliberations, (3) the mindset or emotions of any juror during deliberation, and (4) the testifying juror's own mental process during the deliberations." *United States v. Ortiz,* 942 F.2d 903, 913 (5th Cir.1991. Similarly, Rule 606(b)(1) of the Mississippi Rules of Evidence provides that a court may not receive a juror's statement "on any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another's juror's vote; or any juror's mental processes concerning the verdict of indictment."

For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted on August 29, 2017.

s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE
